OPINION OF THE COURT
Andrew P. O’Rourke, J.
Ordered that these motions are disposed of as follows:
This is an action to recover for personal injuries allegedly sustained by the infant plaintiff Jeffrey C. Dittmer on August 27, 2002, who, while roller blading on a street, had been struck by defendant Terzian’s vehicle. In its decision and order, dated June 8, 2004, this court had set forth a detailed statement of the facts disclosed by the record, which will not be restated herein, and had denied defendants’ motions for summary judgment dismissing the complaint and granted plaintiffs’ motion seeking summary judgment dismissing defendant Ford’s counterclaim.*
A number of trial-related issues are presented by the motions and applications sub judice. Firstly, plaintiffs are moving for an order pursuant to Vehicle and Traffic Law § 1238 (7), precluding the testimony of defendant Ford’s expert biomechanical engineer, James Newman, Ph.D., who, based upon said defendant’s disclosure pursuant to CPLR 3101, is expected to testify relative to the injuries sustained by Jeffrey and, specifically, that the alleged injuries were caused by Jeffrey’s head making contact with the pavement and that had he been wearing a helmet the alleged traumatic head injuries would not have occurred. Secondly, plaintiffs are moving for an order granting a unified trial and for a deposition of defendant Ford’s videographer regarding his outdoor surveillance of Jeffrey on school grounds which resulted in three videotapes which said defendant has disclosed. Related to this application, plaintiffs further *593 are moving for an order that defendant Ford produce any notes, surveillance logs and/or other written materials created by the investigator in connection with the subject surveillance. Lastly, plaintiffs seek an order directing that not more than one defense counsel participate in this trial since the defendants are united in interest.
Defendant Ford vigorously opposes all of the above requests for relief. In addition to arguing that plaintiffs have misinterpreted Vehicle and Traffic Law § 1238 (7), and that same does not preclude the introduction of evidence relative to Jeffrey’s failure to have worn a helmet, defendant Ford alternatively argues by way of cross motion that if plaintiffs are correct in their interpretation of said statute then same must be declared unconstitutional. Moreover, defendant Ford opposes plaintiffs’ application for a unified trial, as well as plaintiffs’ application for an order allowing a deposition of defendant Ford’s videographer. These motions will be addressed at length seriatim.
The court first will address plaintiffs’ motion for an order precluding the testimony of defendant Ford’s expert Dr. Newman. Vehicle and Traffic Law § 1238 (5-a) provides that:
“No person, one or more years of age and less than fourteen years of age, shall skate or glide on in-line skates unless such person is wearing a helmet meeting standards established by the commissioner. For the purposes of this subdivision, wearing a helmet means having a helmet of good fit fastened securely on the head of such wearer with the helmet straps securely fastened.”
Subdivision (7) of Vehicle and Traffic Law § 1238 provides:
“The failure of any person to comply with the provisions of this section shall not constitute contributory negligence or assumption of risk, and shall not in any way bar, preclude or foreclose an action for personal injury or wrongful death by or on behalf of such person, nor in any way diminish or reduce the damages recoverable in any such action.”
From plaintiffs’ point of view, the foregoing mandate could not be more clear: “the failure to wear a helmet cannot be used in any way to reduce damages in a personal injury action,” and defendants may not use the failure to wear a helmet as a defense in this action. Accordingly, plaintiffs submit they are entitled to an order precluding the introduction of any evidence regarding Jeffrey’s failure to have worn a helmet and, specifically, Dr. Newman’s testimony.
*594 Defendant Ford argues that two inquiries are involved in a typical negligence analysis: first, whether the defendant breached the standard of care and whether such breach was a proximate cause of the accident and injuries, and secondly, whether the plaintiff breached its duty to mitigate damages and whether such breach was a proximate cause of the injuries or extent of injuries suffered. Defendant Ford posits that Vehicle and Traffic Law § 1238 (5-a) confers a statutory duty of care upon children under 14 years of age to wear a helmet while inline skating and that Vehicle and Traffic Law § 1238 (7) merely precludes usage of that statutory standard of care in civil actions. According to said defendant, the statutory scheme does not obviate resort to the more onerous common-law standard of care based upon reasonableness and, as best support for its position, defendant Ford notes that the statute specifically states, “The failure of any person to comply with the provisions of this section” (emphasis added). Defendant Ford submits that if the Legislature’s intention had been, as plaintiffs argue, to completely eliminate as a defense and mitigation of damages the failure to wear a helmet, it simply instead would have drafted the statute to provide: “The failure of any person to wear a helmet” rather than “the failure ... to comply” with this statute.
Defendant Ford, in order to demonstrate the distinction between the two standards of care, refers by analogy to the seat belt law. Where a person is statutorily required to wear a seat belt, PJI3d 2:87.1 (2004) requires a jury to determine whether the plaintiff had failed to wear a seat belt and whether defendants proved that some of the claimed injuries would have been prevented by the use of a seat belt. Where, however, a plaintiff is not statutorily required to wear a seat belt, the more onerous jury charge set forth in PJI3d 2:87.2 (2004) is given, which requires the defendant to establish that a reasonably prudent person would have used a seat belt. Defendant contends that it is entitled to make the same showing, i.e., that a reasonably prudent nine-year-old child would have used a helmet while in-line skating on a street.
As its fallback position in the event this court were to find that defendant Ford’s foregoing statutory versus common-law argument is without merit, said defendant argues that Vehicle and Traffic Law § 1238 (7) is unconstitutional as violative of due process in that it is both arbitrary and not reasonably related to protect children in the manner intended, and it *595 unreasonably deprives persons of their property without due process of law. Noting that Vehicle and Traffic Law § 1238 (7) goes far beyond the reaches of all other statutes regarding helmet usage, defendant Ford argues that the effect of the statute is to completely abrogate a plaintiffs duty to mitigate and instead holds a defendant responsible for all injuries even where, as here, the defendant is not the proximate cause of the injury.
Moreover, defendant Ford argues that the inherent unconstitutionality of the statute is that much more apparent where, as here, the parents, persons in the best position to control and monitor the use of safety equipment for their child, are able to benefit from his or her own failure to comply with the statute and maintain a viable derivative claim, without affording the defendant the ability to present evidence of the child’s failure to wear a helmet in his defense.
After this court’s careful review of the applicable law, the submissions at bar and the parties’ respective arguments, the court grants plaintiffs’ motion for an order precluding the testimony by Dr. James Newman during the liability phase and finds that with respect to Jeffrey’s cause of action, his failure to have worn a helmet, as mandated by statute, cannot be used in any way as a defense or in mitigation of Jeffrey’s damages.
The court notes that its examination of the implicated statutes is one essentially of first impression. While the court agrees that the Legislature could have been more circumspect in its choice of language employed in Vehicle and Traffic Law § 1238 (7), and simply have used the words, “The failure to wear a helmet,” to achieve its intended result, nevertheless, the court finds the statute unmistakably clear in expressing the Legislature’s intention to not penalize in any way in any civil action children injured as a result of in-line skating without a helmet. Moreover, it is beyond cavil that it is within the Legislature’s prerogative to change common law as it sees warranted. (See NY Const, art I, § 14.) Defendants have not offered any persuasive proof supporting its argument that it was the Legislature’s intention to retain coexisting approaches to addressing negligence claims of children dependent upon whether a helmet was worn. Indeed, the court agrees with plaintiffs that such approach would have the unintended effect of eviscerating Vehicle and Traffic Law § 1238 (7), and in the absence of such a clear legislative directive, this court declines to find merit in defendant’s position.
The court further rejects defendant Ford’s argument that Vehicle and Traffic Law § 1238 (7) is unconstitutional; accordingly, *596 defendant Ford’s cross motion seeking such declaration is denied.
Firstly, there is of course a strong presumption that a statute is constitutional. (See McMinn v Town of Oyster Bay, 66 NY2d 544, 548 [1985]; Gomez v Evangelista, 290 AD2d 351 [1st Dept 2002].) Moreover, if a statute has some reasonable ponnection to promote the health, safety and welfare of society, it is constitutional. (See Montgomery v Daniels, 38 NY2d 41, 53 [1975]; Courtroom Tel. Network v State of New York, 1 Misc 3d 328 [Sup Ct, NY County 2003].)
Clearly, the Legislature had a legitimate objective in enacting Vehicle and Traffic Law § 1238 (5-a) to protect children who were sustaining serious head injuries in alarming numbers with the increased popularity of in-line skating. The court finds that it was also within the Legislature’s prerogative to limit penalties for the failure to comply with the statute.
Secondly, defendant Ford’s argument of unconstitutionality is premised largely upon its contention that defendants theoretically may be caused to pay for Jeffrey’s injuries, which they contend defendant Terzian did not cause. In making this argument, defendant Ford relies upon evidence in the record which tends to support the finding that Jeffrey’s head injury was caused solely as a result of his head striking the pavement, not as a result of his head striking defendants’ car, and that had Jeffrey worn a helmet he would not have sustained the extent of injuries he did. Essentially, defendant Ford argues that Jeffrey’s failure to wear a helmet was an intervening factor which broke the chain of causation. This court disagrees.
It is well settled that where an “intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant’s conduct, it may well be a superseding act which breaks the causal nexus.” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980] [citations omitted], rearg denied 52 NY2d 829 [1980].) Plainly, the presence of nine-year-old Jeffrey in-line skating on the street without a safety helmet was not unforeseeable in the normal course of events, or independent or far removed from defendant Terzian’s conduct in attempting to pass Jeffrey while he was skating, and the court cannot state as a matter of law that Terzian’s conduct which resulted in Jeffrey’s being struck by Terzian’s car did not cause Jeffrey to be placed in motion, making it likely his head would strike the pavement.
*597 Notwithstanding the foregoing, the court is most troubled by the situation presented at bar where it is apparent that Jeffrey’s parents, who have interposed derivative causes of action for loss of services which necessarily rise and fall with Jeffrey’s claim, potentially will benefit to the extent that Jeffrey’s failure to wear a helmet cannot be used as a defense to his claim or in mitigation of his damages, in accordance with Vehicle and Traffic Law § 1238 (7). They, of course, are the very people entrusted with the care of the tender l-to-14-year age group that said statute seeks to protect, and they clearly are the only persons situated, not only to purchase helmets for their children but, importantly, to require and oversee their wearing of them while in-line skating. It cannot seriously be maintained that the Legislature, in enacting this important legislation to protect our children, also intended to and did protect parents who failed to comply with Vehicle and Traffic Law § 1238 (5-a), as such clearly serves no public purpose relating to health or safety.
This court’s reading of Vehicle and Traffic Law § 1238 (7) makes no mention of parents or their derivative actions; the statute specifically states that the failure to comply therewith does not “preclude or foreclose an action for personal injury or wrongful death by or on behalf of such person, nor in any way diminish or reduce the damages recoverable in any such action.” (Emphasis added.)
Accordingly, the court hereby determines that the jury is entitled to hear evidence of Jeffrey’s failure to wear a helmet which the jury will be instructed, in accordance with Vehicle and Traffic Law § 1238 (7), shall not be used to consider any contributory negligence or assumption of risk by Jeffrey, or in any way to diminish or reduce the damages to which Jeffrey may be entitled, but that Jeffrey’s failure to wear a helmet may properly be considered by the jury in determining whether each parent has the right to recover for the loss of Jeffrey’s services. Anent plaintiffs’ application for an order granting a unified trial, it is of course well settled that in negligence cases a bifurcated trial of the separate issues of liability and damages is preferred. (See 22 NYCRR 202.42; Barron v Terry, 268 AD2d 760, 761 [3d Dept 2000]; Cutsogeorge v Hertz Corp., 239 AD2d 540 [2d Dept 1997]; Rothbard v F.W. Woolworth Co., 233 AD2d 434 [2d Dept 1996].) However, plaintiffs candidly admit that they, at the conclusion of the trial, intend to seek a Noseworthy charge pursuant to PJI3d 1:62 (2004) based upon Jeffrey’s amnesia regarding the facts surrounding the accident. Since *598 plaintiffs necessarily will have to present medical evidence in order to establish by clear and convincing proof that Jeffrey suffers from amnesia (see Sawyer v Dreis & Krump Mfg. Co., 67 NY2d 328, 333-335 [1986]), plaintiffs request a unified trial purportedly so that the jury does not have to hear the same evidence twice regarding plaintiffs memory injury.
It is not disputed that Jeffrey, at his examination before trial, had great difficulty in recalling the facts and that his testimony was confusing and contradictory. It is also not disputed that Jeffrey suffered a brain shear injury and that his doctors would expect that Jeffrey would not be able to recall the accident. However, a condition of amnesia, in and of itself, does not warrant a Noseworthy charge or a unified trial. Rather, it has been held that for liability and damages to be tried together, a plaintiff must demonstrate that the nature of his injuries “has an important bearing on the issue of liability” or that the injuries themselves are probative in determining how the accident happened. (See Armstrong v Adelman Automotive Parts Distrib. Corp., 176 AD2d 773, 774 [2d Dept 1991] [internal quotation marks omitted], quoting Polimeni v Bubka, 161 AD2d 568, 569 [2d Dept 1990]; see also, Barrera v Skaggs-Walsh, Inc., 279 AD2d 442 [2d Dept 2001]; Parmar v Skinner, 154 AD2d 444 [2d Dept 1989].)
Here, the court does not find that plaintiffs have demonstrated that the nature of Jeffrey’s injuries are inextricably intertwined with the issue of liability or that his injuries are probative in determining how this accident happened, particularly where the record does not support any finding that defendant Terzian’s vehicle struck Jeffrey’s head. (See Darwak v Benedictine Hosp., 247 AD2d 771 [3d Dept 1998], lv dismissed 92 NY2d 845 [1998]; Dulin v Maher, 200 AD2d 707 [2d Dept 1994].) Accordingly, it would be an improvident exercise of this court’s discretion to grant a unified trial.
Furthermore, the court finds that plaintiffs are not entitled to a Noseworthy charge. Here, it is apparent that Jeffrey does have recall of certain facts, to which he had testified, and it is notable that Jeffrey had executed an errata sheet with respect to his examination, having changed certain of his testimony, explaining the change based upon his having been confused at the time of his deposition or as a result of his having misspoken. Under this circumstance, a Noseworthy charge is not warranted. (See Cook v Waldbaum, Inc., 250 AD2d 722 [2d Dept 1998], lv denied 92 NY2d 888 [1998]; Miceli v GEICO *599 Props., 215 AD2d 461 [2d Dept 1995]; Fitzgibbon v County of Nassau, 182 AD2d 670 [2d Dept 1992].)
Regarding plaintiffs’ application for an order granting them the opportunity to depose defendant Ford’s investigator, the videographer of the three separate videotapes produced to plaintiffs, the court finds that CPLR 3101 (i) is implicated and grants same to the limited extent that defendant Ford, if it has not previously served upon plaintiffs the outtakes, if any, shall forthwith do so and, further, plaintiffs shall be afforded the opportunity to examine the original tapes. (See Zegarelli v Hughes, 3 NY3d 64, 68-69 [2004].)
The court parenthetically notes that should defendant Ford wish to introduce these videotapes at trial, the videos necessarily must first be authenticated, which requires having the videographer testify that he took the videos, that they correctly depict what he saw and that they have not been altered or edited in any way. (Id. at 69.) Plaintiffs would be afforded the opportunity to cross-examine the videographer on issues of authentication prior to introduction of same into evidence.
Finally, the court denies plaintiffs’ application for an order directing that not more than one defense counsel participate in the trial. Not only does the court find this belated request, coming as it does literally on the eve of trial, to be unfair, particularly where defendants had not been accorded any advance notice of same, having been handed plaintiffs’ brief on this issue during oral argument, and were prejudiced in their ability to respond thereto, but the court finds such relief unwarranted and without good cause to deviate from the basic tenet that each party is entitled to counsel of his or her own choice. While it is true that the liability issue presented unites the two defendants, the court cannot agree that where defendant driver has private insurance and defendant leasing company is self-insured and, further, there is a cross claim for contractual indemnification that their interests are identical warranting a single defense.

 This decision and order presently is under appeal but no stay of the trial is in effect.